**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, | ) ) | |
| Plaintiff, | ) | |
| | ) | No. 14 CV 07586 |
| v. | ) | |
| | ) | Judge John J. Tharp, Jr. |
| ELIZABETH A. UNGER and ALTHEA A. BARTLETT, | ) ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Metropolitan Life Insurance Company ("MetLife") filed this interpleader action pursuant to Fed. R. Civ. P. 22 and the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA") asking this Court to determine to whom it should pay the proceeds of two life insurance policies held by its insured, David Unger ("David"), plus any applicable interest. MetLife named Elizabeth A. Unger ("Elizabeth"), who was married to Unger at the time of his death, and Althea A. Bartlett ("Althea"), Unger's former spouse, as defendants, as well as Roxanna A. Hipple, Unger's former Guardian ad Litem who has since been dismissed from this action. Now before the Court are Elizabeth and Althea's cross-motions for summary judgment. For the reasons set forth below, Althea's motion is denied and Elizabeth's motion is granted.

## BACKROUND

David was a former employee of Alcatel-Lucent USA, Inc. ("Alcatel"), and while he worked there he participated in the Alcatel-Lucent Retiree Welfare Benefits Plan ("BLI Plan").

Joint Statement of Material Facts (*hereinafter* JSOF) ¶¶ 1-2, Dkt. 38; Compl. ¶¶ 5, 8, Dkt. 1. The

BLI Plan is regulated by ERISA and is funded by a group life insurance policy that MetLife

issued. JSOF ¶ 2; Compl. ¶ 5. The BLI Plan provides, in relevant part:

> **Naming a Beneficiary**
> After your retirement, the beneficiary(ies) for your basic life insurance coverage
> are the same as those designated while you were actively employed.
> . . .
> Generally, death benefits are paid to your primary beneficiary(ies). If none of
> your primary beneficiaries are living when you die, payment will be made in
> equal shares to your contingent beneficiary(ies), unless you indicated otherwise. If
> none of your beneficiaries are living when you die or you did not designate a
> beneficiary, payment will be made to your next surviving relative(s) and
> considered in this order: your spouse or domestic partner, your children, your
> parents, or your brother and sister; provided, however, that the insurer may pay all
> or part of such amount to your estate.
> . . .
> **How to Change Your Beneficiary**
> You may change your beneficiary at any time, unless you assign your benefits.
> You do not need the consent of the beneficiary to make a change.
>
> To change your beneficiary, contact the insurer (see section I. Important Contacts)
> for the appropriate form. After you complete the form, return it to the insurer.
> Your change takes effect on the date you signed it, even if you are not alive when
> the insurer receives the form.

JSOF ¶ 3; Compl. ¶ 11; Compl. Ex. B at 4-5.

While he was an Alcatel employee, David also purchased a Participating Group

Universal Life Insurance Policy, Group Policy No. 32900-G, Group No. 96619 ("GUL Policy")

from MetLife. JSOF ¶ 4; Compl. ¶ 5. MetLife asserted in its complaint that the GUL Policy is

not governed by ERISA. Compl. ¶ 5. The GUL Policy provides:

> The "Beneficiary" is the person or persons you choose to receive any benefit
> payable because of your death.
>
> You make the choice in Writing on a form approved by us. This form must be
> filed with the records of This Plan. You may change the Beneficiary at any time
> by filing a new form with us. You do not need the consent of the Beneficiary to
> make a change. When we receive a form changing the Beneficiary, the change

will take effect as of the date you Signed it. The change of Beneficiary will take effect even if you are not alive when it is received.

A change of Beneficiary will not apply to any payment made by us prior to the date the form was received.

. . .

If there is no Beneficiary at your death for any amount of benefits payable because of your death, that amount will be paid to one or more of the following persons who are related to you and who survive you:

(a) Spouse;
(b) child(ren);
(c) parents;
(d) brother and sister.

However, we may instead pay all or part of that amount to your estate.

Any payment will discharge our liability for the amount so paid.

JSOF ¶ 3; Compl. ¶ 5; Compl. Ex. A at 13.

David executed a Beneficiary Designation form on or about October 3, 1995, that made his mother, Thelma Unger, the primary beneficiary for life insurance benefits under both the BLI Plan and GUL Policy. JSOF ¶ 6. Thelma Unger predeceased David, though the parties do not discuss the timing of that event in their submissions. *See* JSOF ¶ 7. David married Althea on October 4, 1995, and several years later, on November 10, 1999, he executed a Beneficiary Designation form that named Althea as the primary beneficiary of both the BLI Plan and the GUL Policy. JSOF ¶¶ 8-9; Compl. ¶ 13. On October 16, 2001, David executed another Beneficiary Designation form that again designated Althea as the primary beneficiary for both the BLI Plan and the GUL Policy, and on November 12, 2004 he executed another such form designating Althea as the primary beneficiary of the GUL Policy. JSOF ¶¶ 10-11; Compl. ¶ 13; Compl. Ex. C.

Althea filed a petition to dissolve her marriage to David on October 4, 2005, in the Circuit Court in Kane County, Illinois. JSOF ¶ 12. That same day, an appearance, waiver of service, and stipulation was filed on David's behalf which said that David consented to the fact that an order may be entered in those proceedings without his appearance, and Althea later divorced David at an ex parte hearing in the state court on December 28, 2005. JSOF ¶¶ 13-14. The state court entered a Judgment for Dissolution of Marriage ("Judgment") as well as a Marital Settlement Agreement ("MSA"), the latter of which was incorporated into the Judgment and included a waiver of estate provision and a release of claims by each party. JSOF ¶¶ 15-18. The MSA did not include any specific reference to the BLI Plan or the GUL Policy. JSOF ¶ 19. Althea and Elizabeth agree that at the time that the state court entered the Judgment and MSA, David was suffering from dementia. JSOF ¶ 21. Despite the entry of the Judgment dissolving their marriage, Althea submitted an application to the Social Security Administration ("SSA") on David's behalf in April 2006, and the SSA adjudicated him disabled that same month. JSOF ¶ 20-21.

David later married Elizabeth on August 4, 2009; the two had previously been married from December 1986 through July 1989. JSOF ¶ 22. On September 13, 2009, David signed a MetLife Beneficiary Designation form listing Elizabeth as the beneficiary. JSOF ¶ 53. Elizabeth and David talked to MetLife personnel about that form, and Elizabeth testified at her deposition in this case that she "thinks" that she and David attempted to send the form to MetLife, but that the insurer would not accept it. JSOF ¶ 53; Elizabeth Dep., JSOF Ex. EU, at 9-13. In any event, MetLife did not change the beneficiary designations on David's BLI Plan or GUL Policy. JSOF ¶ 54.

Shortly thereafter, proceedings resumed in Althea and David's marriage dissolution action. The state court issued an Order to Show Cause on October 22, 2009, scheduling a hearing on David's $3000 maintenance arrearage to Althea and appointing Hipple, an attorney, as David's Guardian ad Litem to report to the court on his mental capacity. JSOF ¶ 23. David's counsel filed a petition in the state court on December 17, 2009, asking that Hipple be appointed Standby Guardian for David and alleging that David was suffering from severe dementia, that the date of his illness's onset was not yet known, and that after entry of the Judgment, David had executed a power of attorney making Althea his agent. JSOF ¶ 24-25; JSOF Ex. D1 at 229-30. The state court entered an order on December 23, 2009, appointing Hipple as David's Standby Guardian "for the limited purpose of obtaining any and all medical records and financial records for him from any source whatsoever, [e]ffective immediately." JSOF ¶ 26; JSOF Ex. D1 at 214. The state court entered another order on February 10, 2010, providing that "Attorney Hipple shall issue subpoenas to investigate financial matters related to [David's] assets/liability/income and expenses, as necessary." JSOF ¶ 28; JSOF Ex. D1 at 190. That court entered yet another order on April 8, 2010, providing that "the [Guardian ad Litem's] request to have the beneficiary designations for any life insurance policies and/or retirement accounts changed to the Guardian ad Litem as the new beneficiary is granted over objection of plaintiff's counsel Vin Larson." JSOF ¶ 29; JSOF Ex. D1 at 188.

Hipple contacted MetLife in connection with that April 8, 2010 court order. The parties agree that on May 20, 2010, MetLife received a letter from Hipple stating that she was the Guardian ad Litem for David and that all beneficiary designations for any life insurance that MetLife held for David should be changed to "Roxanna M. Hipple, the Guardian ad Litem for David E. Unger, effective immediately, in accordance with the enclosed court order." *See* JSOF

¶ 30; Compl. Ex. G. MetLife alleged in its complaint that no court order was enclosed with Hipple's May 20, 2010 correspondence, Compl. ¶ 17, but the defendants agree that Hipple did mail that order and that a certified mail receipt states MetLife received it on May 24, 2010. JSOF ¶ 49. Hipple sent the letter and order by mail and fax, confirmed that the fax was received via a journal entry, and testified at her deposition that she personally spoke with MetLife personnel about changing the beneficiary designation. JSOF ¶ 50; Hipple Dep., JSOF Ex. RH, at 16-21. Despite Hipple's efforts, MetLife never changed the beneficiary designations on either the BLI Plan or the GUL Policy. JSOF ¶ 54. The defendants also agree that Hipple was never intended to be the ultimate beneficiary of those plans. JSOF ¶ 31. Hipple's role as Guardian terminated in October 2011, Compl. ¶ 21,[1] and Hipple disavows any claim to or interest in the policy proceeds. Hipple Stipulation, Dkt. 14, Ex. A.

Soon after, the status of Althea and David's dissolution arrangement changed. In response to a motion by David's counsel, the state court on October 20, 2010, vacated the Judgment "as to all matters relating to property and/or obligations" other than the dissolution of David and Althea's union and required Althea to make a $245,000 asset transfer to Hipple, as David's Guardian ad Litem. JSOF ¶ 33; JSOF Ex. D1 at 15-18. At some point, Hipple had spoken with Althea and her counsel to talk about the settlement of the dissolution proceedings, and Althea ultimately signed each page of the October 20, 2010 order. JSOF ¶ 51. Hipple testified at her deposition that she saw that order as a release by Althea of all of David's assets and Alcatel/MetLife retirement accounts, though the parties agree that the order did not refer to the BLI Plan or the GUL Policy. JSOF ¶¶ 33, 52; JSOF Ex. D1 at 15–18; Hipple Dep. at 23-25.

---

[1] The parties do not include this fact in their joint submission, but it does not appear to be contested. The complaint also alleges that Elizabeth succeeded Hipple as Guardian ad Litem, but while Elizabeth endorses that averment, Althea answered that she lacks sufficient knowledge or information to form a belief regarding it.

While he was still married to Elizabeth, David died on December 20, 2013 as a result of an intracranial hemorrhage. JSOF ¶ 36. At that time, the only Beneficiary Designation forms that MetLife had on file for the BLI Plan and the GUL Policy both designated Althea as the beneficiary. JSOF ¶¶ 40-41. The combined benefits payable under the BLI Plan and GUL Policy totaled $182,414.99,[2] and Althea submitted a claim for those proceeds on March 13, 2014. JSOF ¶ 42. A probate estate was opened for David in Illinois state court in December 2014, and Elizabeth became the Independent Administrator. JSOF ¶ 37. MetLife filed its complaint for interpleader on September 29, 2014, and Elizabeth and Althea both filed their respective motions for summary judgment on August 31, 2015.

## ANALYSIS

In her motion for summary judgment, Elizabeth argues that the facts of this case demonstrate David's intent to change the beneficiary designation to Elizabeth for both the BLI Plan and GUL Policy. Elizabeth Mem. at 6, Dkt. 40. In particular, she points to the agreed facts that David signed a MetLife Beneficiary Designation form in September 2009 listing Elizabeth as beneficiary and that he and Elizabeth spoke with MetLife personnel about making that change, although MetLife never did. *See id.* at 7. Elizabeth argues that she and David never sent the form to MetLife because they were told that MetLife would not accept it on the ground that

---

[2] MetLife stated in its complaint that the benefits payable under the BLI Plan totaled $97,000.00 and that the benefits under the GUL Policy totaled $95,114.99, and the parties referred to these figures in their Joint Statement of Facts. Compl. ¶ 19; JSOF ¶¶ 38-39. MetLife informed the Court in a March 23, 2015 motion, however, that it had miscalculated the benefits payable under the BLI Plan. *See* MetLife Mot., Dkt. 31. MetLife stated that the correct amount payable under the BLI Plan was actually $87,300.00, and that the total amount in dispute was therefore $182,414.99 instead of the $192,114.99 originally alleged. *Id.* The parties have not contested these updated figures. To reflect this updated figure, this Court amended its prior order granting MetLife leave to deposit with the Clerk of Court the total benefits due, less MetLife's agreed-upon attorney's fees and costs of $6500, plus any applicable interest. Am. Order, Dkt. 34. MetLife then deposited $176,485.24 with the Clerk of Court on April 16, 2015. Notice of Deposit, Dkt. 35.

the insurer had another power of attorney on file for David. *Id.* Elizabeth also asserts in her motion that Hipple later undertook positive acts to change the beneficiary designations to Hipple, as David's Guardian ad Litem, and that these efforts were substantial as well as "extensive and consonant" with David's desire to make Elizabeth his beneficiary. *Id.* at 7. Elizabeth argues that the actions of David and Hipple thus evidence David's intent and were in substantial compliance with the policies' requirements for changing a beneficiary designation. *Id.* at 10.

Althea argues in her own motion that she was the designated beneficiary on both the BLI Plan and the GUL Policy, and that her rights as beneficiary thus vested upon David's death. Althea Mem. at 4. She asserts that no exceptions to this general rule apply, including any exception based on equity. To that point, Althea asserts that her divorce from David had no bearing on her status as beneficiary because neither the original divorce Judgment and MSA nor the October 20, 2010 order that vacated most of that prior Judgment made any reference to either life insurance policy. *Id.* at 6. Althea argues that while the April 8, 2010 order did address the policies—although, she asserts, only generically—this order did not effect a final disposition of the policies' proceeds, and the defendants agree that Hipple was never intended to be the ultimate beneficiary. *Id.* at 7. In addition, Althea asserts that Elizabeth is not entitled to recover as beneficiary based on Hipple's substantial compliance with the policies' beneficiary designation requirements because Hipple was not acting on the part of David, the insured, but was instead acting as Guardian ad Litem. *Id.* at 11. Althea further argues that Hipple failed to follow the policies' stated process for changing beneficiaries, that Hipple and Elizabeth never followed up with MetLife after Hipple's communications with the insurer, and that Elizabeth and David's September 2009 interactions with MetLife similarly fail to qualify as substantial

compliance with the policies' requirements. *Id.* at 12-13. Finally, Althea argues that no exception applies here based on a fraudulent submission of a beneficiary designation form. *Id.* at 13-14.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *EEOC v. CVS Pharmacy, Inc.*, 809 F.3d 335, 339 (7th Cir. 2015) (quoting Fed. R. Civ. P. 56(a)). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Kvapil v. Chippewa Cnty.*, 752 F.3d 708, 712 (7th Cir. 2014). As with any motion for summary judgment, a court considering cross-motions for summary judgment will "constru[e] all facts, and draw[] all reasonable inferences from those facts, in favor of the nonmoving party." *Garofalo v. Vill. of Hazel Crest*, 754 F.3d 428, 430 (7th Cir. 2014).

In determining the validity of attempted changes of beneficiaries under ERISA-regulated insurance policies, the Seventh Circuit has adopted a federal common law doctrine of substantial compliance. *See Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 566-67 (7th Cir. 2002) (finding that ERISA is silent on how to resolve disputes concerning changes of beneficiaries of life insurance policies but does preempt Illinois common law in this area, and applying the federal common law doctrine as articulated by the Fourth Circuit); *Davis v. Combes*, 294 F.3d 931, 941-42 (7th Cir. 2002) (applying the federal common law doctrine of substantial compliance to a dispute over an ERISA-governed policy's change of beneficiary requirements). Under the standard the Seventh Circuit has embraced, an insured can effectively change the beneficiary of his or her ERISA life insurance policy if the insured substantially complies with the policy's change of beneficiary provisions. *Johnson*, 297 F.3d at 566. That standard is met when the insured "(1) evidences his or her intent to make the change and (2) attempts to effectuate the

change by undertaking positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions of the policy." *Id.* (quoting *Phoenix Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 564 (4th Cir. 1994)). Notably, MetLife asserted in its complaint that while the BLI Plan is regulated by ERISA, the GUL Policy is not. This distinction has little impact on the Court's substantial compliance analysis, however. The substantial compliance doctrine also applies under Illinois law to insurance policies that are not governed by ERISA, *see, e.g.*, *Hoopingarner v. Stenzel*, 768 N.E.2d 772, 776 (Ill. App. Ct. 2002) ("Illinois generally requires that the insured substantially comply with the policy terms" for changing a beneficiary), and as the Seventh Circuit has noted, the federal common law test and the Illinois doctrine of substantial compliance "are essentially the same." *Johnson*, 297 F.3d at 567; *see also Travelers Ins. Co. v. Smith*, 435 N.E.2d 1188, 1190 (Ill. App. Ct. 1982) (discussing the Illinois common law doctrine of substantial compliance).

It is on this doctrine that Elizabeth relies for much of her summary judgment motion, and it is indeed applicable to the present case. It is undisputed that David and Hipple both took some level of action aimed toward effecting a change in the beneficiary designation for David's life insurance benefits; the question is whether those efforts were enough to satisfy the substantial compliance standard such that Althea lost her beneficiary status.

Althea maintains, and the Court agrees, that David and Elizabeth's actions in September 2009 were insufficient to satisfy the substantial compliance standard such that Elizabeth became the beneficiary of either policy at that time. There is some evidence that David's intent was to make Elizabeth his beneficiary: the parties agree that he signed a Beneficiary Designation form at that time listing her as such. But whether David attempted to effectuate that change through actions that were similar to those required by either policy is uncertain. He and Elizabeth spoke

to MetLife personnel about the form, but Elizabeth testified only that she "thinks" that she and David tried to submit it to the insurer. And in any event, even if those efforts had effected a change in beneficiary to Elizabeth, that change would have been negated by Hipple's substantial efforts to change the beneficiary designations to herself, as David's Guardian ad Litem, in 2010.

Hipple's actions as David's Guardian ad Litem easily satisfy the substantial compliance standard. Her intent to change the beneficiary designations is evident from the April 2010 order, which indicated that Hipple requested the state court's approval to make those changes. Hipple's subsequent actions further evidence her intent to effect this change and also satisfy the standard's requirement for taking positive action similar to that required by the policies themselves. It is undisputed that MetLife received a letter from Hipple stating that she was the Guardian ad Litem for David and that all beneficiary designations for any life insurance that MetLife held for David should be changed to her name, as David's Guardian ad Litem. Hipple referenced the April 2010 court order in that letter, and the defendants agree that Hipple mailed that order and that a certified mail receipt confirms MetLife received it. Althea and Elizabeth also do not dispute that Hipple sent that correspondence by mail and fax, and Hipple testified at her deposition that she personally spoke with MetLife personnel about making the beneficiary changes. Both the BLI Plan and the GUL Policy provided that an insured may change his or her beneficiary by filling out a form. Compl. Ex. B at 4-5; Compl. Ex. A at 13. Although Hipple apparently did not fill out a form provided by MetLife, her multiple instances of correspondence with the insurer in which she requested the beneficiary change and referenced the April 2010 order were positive acts that were "for all practical purposes similar to the action required by the change of beneficiary provisions of the policy." *See Johnson*, 297 F.3d at 566.

Althea also correctly notes that Hipple did not reference the BLI Plan or GUL Policy by name in her letter to MetLife. *See* Compl. Ex. G. As the Fourth Circuit has noted, however, "[b]y definition, substantial compliance is less than actual compliance." *Adams*, 30 F.3d at 565. Perfection is not the applicable standard, and Hipple's actions here were adequate to meet the Seventh Circuit's substantial compliance test. Comparisons to relevant case law support this conclusion. In *Davis*, the Seventh Circuit found that an insured had substantially complied with her life insurance policy's requirements where she failed to sign and date her change of beneficiary form on the provided line. *Davis*, 294 F.3d at 942. The court found that while that was a careless error, the insured had demonstrated the requisite intent and undertaken sufficient actions to change the beneficiary because she had requested the form, completed it with the exception of the signature and date line, and submitted it. *Id.* In another change of beneficiary case, the Fourth Circuit found that an insured had substantially complied where there was evidence that he said over the phone that he intended to make the change, signed a form without indicating who the new beneficiary should be, and later phoned his employer to try to confirm the change. *Adams*, 30 F.3d at 567-68. The insureds in those cases did not fully complete the insurers' preferred forms, and neither did Hipple here. Hipple's multiple contacts with MetLife made clear, however, that she was requesting the beneficiary change and acting pursuant to the state court's approval in doing so.

Althea's argument that Hipple was not acting for the "insured" when she undertook these efforts is beside the point. The state court's April 2010 order explicitly granted Hipple the authority to change the beneficiary designations "for any life insurance policies and/or retirement accounts" to her, in her capacity as David's Guardian ad Litem. *See* JSOF ¶ 29; JSOF Ex. D1 at 188. Hipple was not acting for herself, but instead was acting in the capacity of her court-

appointed relationship to David. Hipple's efforts therefore effectively terminated Althea's status as a beneficiary under the two policies, and made Hipple, as David's Guardian ad Litem, the beneficiary for both the BLI Plan and the GUL Policy.[3]

This conclusion effectively means that, at David's death, there were no designated beneficiaries of the BLI Plan or the GUL Policy who could properly recover those policies' proceeds. Althea and Elizabeth agree that Hipple was never intended to be the final beneficiary of either plan. Hipple's actions in making herself the beneficiary, as David's Guardian ad Litem and pursuant to a state court order, do not translate to clear evidence of David's intent to make Elizabeth the beneficiary, however. In the absence of a beneficiary, both policies list the insured's spouse first among family members to whom payment may be made if the insured did not designate a beneficiary. *See* Compl. Ex. B at 4; Compl. Ex. A at 13. There is no dispute that Elizabeth Unger was legally married to David at the time of his death; she is therefore entitled to the proceeds of his insurance policies in the absence of a properly designated beneficiary.

Althea's remaining arguments do not warrant a different outcome. Althea is correct that under Illinois law, "a former spouse is not precluded from collecting the other spouse's insurance policy proceeds as a named beneficiary" unless the marital settlement agreement specifically

---

[3] Althea argues that the April 8, 2010 order giving Hipple approval to change the beneficiary designations to herself as Guardian ad Litem is just evidence of an ongoing investigation and not "a final disposition of any marital assets." Althea Mem. at 7-8. She notes that the Guardian ad Litem position is created by statute and argues that there is nothing in the statute or case law to suggest that a Guardian ad Litem's duties include taking permanent title to property on behalf of a ward. *Id.* at 8-9. That job, she contends, belongs to a Standby Guardian. *Id.* at 9. She contends that if a final disposition of the policy proceeds was really being effected, then the designations would have been changed to Hipple as Standby Guardian, instead of Hipple as Guardian ad Litem. *Id.* at 8. This is much ado about nothing. No one disputes that the designation of the Guardian ad Litem as the beneficiary of David's policies was not intended to be a "final disposition" of the proceeds. The significance of the April 2010 order is, rather, that it effectively terminated Althea's status as beneficiary of the policies (more specifically, it authorized Hipple to take the action that did so).

prohibits the former spouse from doing so. *In re Marriage of Velasquez*, 692 N.E.2d 841, 845 (Ill. App. Ct. 1998). Althea asserts that neither the dissolution Judgment and MSA, nor the state court order from October 2010 that vacated them except as to the dissolution of Althea and David's marriage, specifically mentioned the life insurance policies and thus had no impact on Althea's designation as beneficiary. Even if the Court were to apply this state law principle to one or both of the policies—to both only on a finding that ERISA did not preempt this area of state law—a finding that the dissolution proceedings left Althea's beneficiary status intact would still not affect the Court's determination that Hipple's substantial compliance in 2010 was effective to remove Althea as the beneficiary. Finally, Althea makes the additional argument that Elizabeth is not entitled to the life insurance proceeds based on any allegation that the forms naming Althea as beneficiary were fraudulently submitted. Although Elizabeth makes some reference to allegedly wrongful conduct by Althea in connection with her divorce from David, it is true enough that Elizabeth does not appear to allege that the beneficiary forms naming Althea were the result of a fraud. No matter. Whether procured by fraud or not, Althea's designation as beneficiary was terminated by Hipple's actions in 2010.

*     *     *

For the foregoing reasons, Althea's motion for summary judgment is denied and Elizabeth's motion for summary judgment is granted.

Date: September 29, 2016

_____
John J. Tharp, Jr.
United States District Judge